# WILLIE FREDERICK BRADY *v.* STATE OF MARYLAND

[No. 108, September Term, 1980.]

*Decided September 14, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH and RODOWSKY, JJ., dissent. SMITH, J., filed a dissenting opinion at page 270 *infra,* in which MURPHY, C. J., and RODOWSKY, J., concur.

This is the fourth time Willie Frederick Brady has asked an appellate court in the State of Maryland to determine whether he was denied his constitutional right to a speedy trial. The first time he asked, the Court of Special Appeals, in an unreported *per curiam* opinion, *Willie Frederick Brady*

*v. State of Maryland,* No. 1226, September Term, 1978, filed June 11, 1979, held that because the defendant was unaware of the pending charge for most of the 14-month period of delay, a showing of actual prejudice resulting from the delay was necessary for a dismissal of the charge on speedy trial grounds. This court reversed approximately one year later in *Brady v. State,* 288 Md. 61, 415 A.2d 1126 (1980) (*Brady I* ), because we determined that the Court of Special Appeals did not weigh all of the various factors relevant to the delay, and we remanded the case to that court for application of the balancing test in accordance with the principles set forth in our opinion. On September 22, 1980, the Court of Special Appeals again affirmed Appellant's conviction, this time in a reported opinion, *Brady v. State,* 46 Md. App. 518, 419 A.2d 390 (1980). We granted certiorari to settle the role of prejudice in speedy trial cases and to emphasize the role to be played by the other factors courts have stressed as important in the balancing process.

First we shall quote from our summarization of the facts in *Brady I:*

> The defendant, Willie Frederick Brady, was arrested on June 7, 1977, near the scene of an apparent breaking and entering in Anne Arundel County. He was charged with breaking and entering and released on bail. On June 19, 1977, Brady received the following letter from the District Court, sitting in Anne Arundel County:
>
>> "This is to advise you that the above charge(s) [Break & Enter] against you had been dismissed in the District Court. The State's Attorney's office in Annapolis has failed to comply as to whether this case would be tried in District Court or the Circuit Court. . . ."
>
> Unknown to Brady, however, on August 22, 1977, he was indicted for the same offense by an Anne Arundel County grand jury. The arraignment was set for September 2, 1977, and a notice of the indict-

ment and a summons for the arraignment were sent to Brady's last known address. Both were returned undelivered. When Brady did not appear on the date set for the arraignment, a bench warrant was issued for his arrest.

Brady was held in the Baltimore City Jail from November 1977 to May 29, 1978, on an unrelated charge. On May 29, 1978, upon Brady's release from the Baltimore City Jail, Anne Arundel County authorities, pursuant to a detainer that had been lodged against him, transported Brady to the Anne Arundel Detention Center. Brady was arraigned in the Circuit Court for Anne Arundel County on the breaking and entering charge on June 9, 1978; then, for the first time, he learned of the reason for the detainer; and at the arraignment he moved for a speedy trial. A trial date of July 25, 1978, was set. On July 14, 1978, Brady filed a motion to dismiss the indictment for lack of a speedy trial. When the case was called for trial on July 25, 1978, the State sought a postponement because one of its witnesses, a police officer, was absent. The trial court, over the defendant's objection, granted the postponement.

Brady was finally tried on August 8, 1978, was found guilty by the jury of breaking and entering, and was sentenced to one year's imprisonment. At that time, the trial court denied his motion to dismiss on speedy trial grounds because Brady had failed to show actual prejudice. [288 Md. at 62-63 (footnote omitted)].

In *Brady I* we set forth the constitutional standard applicable in speedy trial cases announced by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Once there is a pre-trial delay of sufficient length, "it becomes 'presumptively prejudicial', thereby triggering a balancing test [which] necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." 288 Md. at 65. The factors to be weighed in the balancing, a

non-exclusive list, are "the length of the delay, the reasons for the delay, the defendant's assertion of his speedy trial right, and the presence of actual prejudice to the defendant." *Id.* The court also identified three interests to be protected in the assessment of actual prejudice: (i) preventing oppressive pretrial incarceration; (ii) minimizing the anxiety and concern of the accused; and (iii) limiting the possibility that the defense will be impaired. 288 Md. at 67.

In the circumstances of the present case, the State candidly admits that the fourteen month delay Brady suffered gives rise to a speedy trial claim of *prima facie* merit. Therefore, the operation of the presumption is conceded; the State's hurdle is set. What remains is the application of the balancing test.

When the Court of Special Appeals applied the test it dealt with the first three factors in one paragraph. In that paragraph there is nothing to be found that weighs against the defendant. In fact, when discussing reasons for delay, the second factor, that court assessed it "entirely against the State weighed by its neglect." 46 Md. App. at 519. The intermediate court excused the Appellant's failure to assert his speedy trial right because he was unaware he was being charged with a crime. It apparently assigned no weight at all to the length of delay. The obvious result of the appellate court's analysis, so far, is that nothing has been weighed against the defendant and the reasons for delay factor weighs against the State. If it had stopped here then, logically, it should have reached a result for the defendant.

The Court of Special Appeals then went on to analyze actual prejudice and found none "averred, demonstrated or apparent." 46 Md. App. at 519. However, at this point the balancing stopped. The intermediate court equated or confused actual prejudice, the interests that have to be accommodated in an analysis of actual prejudice, with presumed prejudice. Its conclusion was that Brady had not been able to show any prejudice, actual or presumed, and that, therefore, he was not entitled to dismissal. There was no

mention of whatever offsetting weight the State's neglect played.

The Court of Special Appeals was apparently confused about the mechanics of the application of the *Barker* balancing test. Before launching into a discussion of the appellate court's mistakes, a brief explication of the test may provide some guidance.

The *Barker* test shares one thing in common with all balancing tests and that is the difficulty in assigning weights to the various relevant factors. This is particularly true in an area such as this where the circumstances of each case are different, the people involved in each case are different, and the right alleged to have been abridged is one of constitutional significance. Despite this difficulty, however, it is the function of the court to sift through the various factors, employ some reasoned analysis to determine which are more important and which have greater impact, and reach a just determination as to which way the scales tip.

A problem peculiar to the *Barker* test is its use of the terms *presumption of prejudice* and *actual prejudice*. When there has been a lengthy pretrial delay, one of constitutional dimension, then a presumption arises that the defendant has been deprived of his right to a speedy trial; a presumption of prejudice. Once this presumption asserts itself, a balancing test must be employed which involves a weighing of four factors, one of which is actual prejudice. Actual prejudice involves a consideration of three interests the speedy trial right is meant to protect. Whatever importance it assumes in the final outcome is a function of the facts of the particular case.

Turning our attention, then, to the application of the *Barker* test to the *Brady* case, the first factor to be weighed is the length of the delay. As the Court of Special Appeals noted, the delay was fourteen months. What the Court of Special Appeals failed to note, however, is that this must certainly be weighed against the State. In this case, while fourteen months is enough to invoke constitutional issues, we do not construe it as controlling.

The next factor for examination is the reason for the delay. As we see it, the State, in the performance of its public trust, has a duty to coordinate the efforts of its various criminal divisions in attempting to locate a defendant. Its failure to do so in the instant case is particularly disheartening. First, Brady was arrested, released on bail, then informed that the "charge(s)" had been dismissed. Two months later he was indicted for the same offense. Two months after that Brady was incarcerated on an unrelated charge in the Baltimore City Jail, where he remained for six months. Nonetheless, even though Brady was right under their noses, the authorities made no attempt to find him. He remained totally unaware of the pending charges against him. Upon release from City Jail he was sent to Anne Arundel County, where he had to wait several weeks between arraignment and the first scheduled date of trial. As if the State's neglect were not manifest and egregious enough at this point, the State sought and obtained a two week postponement, during which time Brady remained in jail. This prosecutorial indifference tips the scales most heavily in Brady's favor.

The third factor for examination is the defendant's assertion of his speedy trial right. The Court of Special Appeals excused Brady in this and indeed it should. This was a direct result of the State's neglect in its duties. Although in most situations this factor would probably weigh against the defendant, in the circumstances of this unusual case it cannot.

The fourth factor, and the source of some confusion, is actual prejudice. This involves an analysis of the three elements of this factor which the speedy trial right seeks to protect: (i) oppressive pretrial incarceration, (ii) anxiety and concern of the accused, and (iii) impairment of the accused's defense.

The Court of Special Appeals found that there was "neither incarceration nor could there have been anxiety or concern in the absence of knowledge." 46 Md. App. at 519. This conclusion clearly belies the facts here. Brady spent from May 29, 1978, the date he was released from Baltimore City Jail, to August 8, 1978, the date he was tried, in Anne Arundel

County Detention Center. This period of incarceration was due entirely to the State's neglect, as the Anne Arundel County prosecution could have been instituted while Brady was confined at Baltimore City Jail or perhaps even earlier. The intermediate appellate court was wrong in so perfunctorily dismissing this period of pretrial incarceration. On this basis alone Brady suffered at least some actual prejudice.

As to the second element, the appellate court found that Brady had suffered no anxiety or concern as a result of the delay. It placed no significance on the fact that Brady was placed on probation on May 29, 1978, and should have been released from confinement. However, pursuant to the detainer, he was sent to Anne Arundel County and arraigned on June 9, 1978, where he first learned of the charges against him. This sudden awareness that he was not free, but still being held in jail for charges which had been dismissed the year before, must have generated a response more than mere anxiety. He had to be frustrated. In which event, the following two months in jail awaiting the outcome of the charges had to exacerbate his concern. As we have said before:

> "The speedy trial guarantee recognizes that a prolonged delay may subject an accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving — uncertainties that a prompt trial removes." [*Jones v. State,* 279 Md. 1, 17, 367 A.2d 1 (1976) quoting *Strunk v. United States,* 412 U.S. 435, 439, 93 S. Ct. 2260, 37 L. Ed. 2d 56 (1973).]

It is clear that here, too, Brady suffered at least some actual prejudice.

The Court of Special Appeals then looked at the colloquy between the trial judge and defense counsel and found that the third element, impairment of defense, had been untrammeled because defense counsel was unable to show

that as a result of the delay witnesses had become unavailable or records had been lost. 46 Md. App. at 519-20. In this case it may very well be that the impairment to Brady's defense was not readily apparent or so prejudicial as to be dispositive. However, such a long delay potentially creates obstacles in the defendant's ability to present a defense and should not be discounted.

Counsel's comments illustrate this point:

> COURT: . . . [A]ny of his witnesses gone, dead?
> MR. LEGUM: *Not that we know of.* . . .
>
> * * *
>
> COURT: Inability for him to obtain records?
> MR. LEGUM: *Not that we know of,* Your Honor. [Emphasis supplied.]

The operation of the delay, in and of itself, decreases the chances that pro-defense witnesses can be found, that the defendant can remember the incident in question sufficiently well to assist in his defense, or that exculpatory physical evidence (either at the scene or elsewhere) will turn up. Thus, while Brady may not have been able to articulate specific indicia of impairment to his defense, a delay of this length and under these circumstances militates against the State's assertion that there has been no impairment. Therefore, we regard the effect of this element to be neutral.

We conclude that when the State delayed Brady's prosecution for fourteen months a presumption arose that he had been deprived of his right to a speedy trial. This required the trial court, upon Brady's assertion of his right, to analyze the circumstances attending the case according to the balancing test set forth in *Barker.* Had the trial court and the appellate court followed this procedure they would have decided this issue in Brady's favor. The factor most determinative of the issue, in this case, is *the reason for the delay:* prosecutorial indifference. Brady's trial was not delayed because of someone's professional judgment regarding the allocation of scarce resources, but because of the inexcusable failure of

the State to check for Brady's presence within the correctional system itself. However, in our opinion, none of the factors can be found to weigh in favor of the State. We conclude, therefore, that Brady's speedy trial rights were unconstitutionally violated. A dismissal was the appropriate remedy under the facts of this case. Accordingly, the judgment of the Court of Special Appeals is reversed.

> *Judgment of the Court of Special Appeals reversed; case remanded to that court with instructions to reverse the judgment of the Circuit Court for Anne Arundel County and to remand to that court with instructions to dismiss the indictment with prejudice.*
> *Costs to be paid by Anne Arundel County.*

*Smith,* J., dissenting:

I agree, as I must, that under *Barker v. Wingo,* 407 U.S. 514, 516, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), and our own cases of *Brady v. State,* 288 Md. 65, 415 A.2d 1126 (1980); *Wilson v. State,* 281 Md. 640, 644, 382 A.2d 1053, *cert. denied,* 439 U.S. 839 (1978); *Jones v. State,* 279 Md. 1, 6, 367 A.2d 1 (1976), *cert. denied,* 431 U.S. 915 (1977); *Erbe v. State,* 276 Md. 541, 546-47, 350 A.2d 640 (1976); *Smith v. State,* 276 Md. 521, 527-28, 350 A.2d 628 (1976); and *Epps v. State,* 276 Md. 96, 104-09, 345 A.2d 62 (1975), we must engage in a balancing test to determine whether or not Brady has been denied his right to a speedy trial. However, when I balance the factors here I reach the conclusion that Brady has *not* been denied a speedy trial. The four factors are: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Let us examine them.

### a. Length of the delay

As the majority opinion correctly indicates, Brady was indicted by the Grand Jury for Anne Arundel County on August 22, 1977. The case was finally tried on August 8, 1978, a little less than a year later. It must be remembered that in *Barker* there was a delay of approximately five years between arrest and trial. The Court considered this "extraordinary," but found it outweighed by other factors, holding there was no denial of the right of a speedy trial. In *Dickey v. Florida,* 398 U.S. 30, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970), decided prior to *Barker,* Mr. Justice Brennan in a concurring opinion listed the four factors mentioned in *Barker,* saying that they "are often mentioned as the determinants of reasonableness." It is of interest here that he noted, "The length of the delay, however, appears to be significant principally as it affects the legitimacy of the reasons for delay and the likelihood it had prejudicial effects." 398 U.S. at 48, n. 12. In *United States v. Spoonhunter,* 476 F.2d 1050, 1057 (10th Cir. 1973), the Court said that "[t]he mere passage of time does not, per se, establish an unconstitutional denial of a right to speedy trial."

### b. Reason for the delay

I recognize that it would be nice if the State of Maryland could afford some type of computer system by which a prosecutor or police department could ascertain at any given time whether a specific individual is incarcerated at any place in the State of Maryland. This is not a perfect world. So far as I know no such system exists. The delay here purely and simply was brought about by the fact that Brady was in jail elsewhere on unrelated charges. In *Barker* the Court pointed out that although "[a] more neutral reason such as negligence or overcrowded courts should be weighed less heavily [than a deliberate attempt to delay the trial] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* 407 U. S. at 531.

### c. Assertion of the right

Brady came into the custody of the Anne Arundel County authorities on May 29 and asserted the right on June 9. Thus, he did in fact promptly assert the right.

### d. Prejudice

In *Barker* the Court recognized three interests of defendants which should be considered in assessing prejudice to a defendant from delay: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired," with the latter being "the most serious ... because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S. at 532.

The first interest obviously is not applicable here since Brady was incarcerated *on this charge* only from May 29 to August 8. For similar reasons there can be no contention of undue anxiety and concern of the accused. The majority opinion concedes that Brady's trial counsel commented that "no claim is made" that the defense was in any manner impaired.

### e. Balancing the factors

When one balances the factors here one notes that although the reason for the delay must go into the balance against the State, it is one the Supreme Court in *Barker* said should be weighed less heavily against the State than a deliberate attempt to delay the trial. I am not even sure that the circumstances of this delay rise to the level of negligence. I know of no requirement that the State must at all times have an *instant* inventory available for each prosecutor or sheriff reflecting all persons incarcerated in the State together with their location. However, the circumstances and the length of the delay do go into the scales against the State. Let it be noted again that the actual elapsed time

between Brady's passing into the custody of Anne Arundel County and trial was but seventy-one days, May 29 to August 8. The time from indictment to trial was not the fourteen months to which the majority opinion constantly refers, but eleven months and eighteen days. As previously noted, under the circumstances existing in *Barker* the Supreme Court did not regard a delay of approximately five years as a denial of a speedy trial.

When the majority examine prejudice they do their best to get actual prejudice into the scales on the side of Brady rather than presumed prejudice from the length of the delay. Let it ring loud and clear that in response to questions from the court to counsel for Brady as to whether "any of [his] witnesses [were] gone [or] dead" or otherwise "not available" or whether Brady had been unable "to obtain records" or "transcripts," the attorney replied, "Not that we know of . . . ." He went on to say, "No claim is made to that point of prejudice." He presumably was qualified to answer the questions and to make the statement. For the life of me I cannot see how one can find actual prejudice here. Although in the final analysis the majority says, "[W]e regard the effect of this element to be neutral," I am unable in the light of this plain statement of counsel to comprehend the majority's statement, "[A] delay of this length and under these circumstances militates against the State's assertion that there has been no impairment."

All the majority really finds to place in the balance against the State is its failure to know that Brady was in custody. When one notes that no actual prejudice was shown in that Brady could have had no concerns relative to these charges so long as he did not know about them, that there is not the slightest sign here of an impairment of his defense, and that his actual pretrial incarceration on these charges was but seventy-one days, I do not see how one tips the balance in Brady's favor. In this instance Brady was in the jail of a jurisdiction immediately adjoining Anne Arundel County, Baltimore City. Suppose, however, that the charge had been in Garrett County and that Brady had been incarcerated at the other end of the State, Somerset or

Worcester County, for instance, would the decision here be the same? If so, are we now to understand that it is incumbent upon a sheriff possessed with a bench warrant for apprehension of an individual to make inquiry of each of the other twenty-three jurisdictions of the State as to whether by chance the accused could be residing in jail there? If not, within what radius must inquiry be made? It seems to me that the majority here in its disgust with the fact that we do not live in a perfect world where one may know at any given moment precisely who is incarcerated in Maryland has put its thumb on the scale on the side of the defendant in the balancing process. In my view this man was in no way denied a speedy trial. Hence, I would affirm.

I am authorized to state that Chief Judge Murphy and Judge Rodowsky concur in the views here expressed.