732 A.2d 1004

**STATE of Maryland**

v.

**Michael R. RUBEN.**

**No. 1745, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

July 8, 1999.

432

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellant.

Peter Johnson (law student pursuant to MD Rule 16) (Stephen E. Harris, Public Defender and Margaret L. Lanier, Asst. Public Defender, on the brief), Baltimore, for Appellee.

Argued before HARRELL, SALMON and EYLER, JJ.

EYLER, Judge.

Michael R. Ruben, appellee, was charged with robbery, first degree assault, second degree assault, theft, and several weapons offenses with respect to one victim, and attempted murder, attempted robbery with a dangerous and deadly weapon, first degree assault, second degree assault, and several weapons offenses with respect to a second victim. On September 10, 1998, the Circuit Court for Baltimore City dismissed all charges on the ground that appellee's federal constitutional right to a speedy trial had been denied. The State noted this appeal and inquires whether the circuit court erred in dismissing the charges against appellee. We answer the question in the affirmative, and consequently, reverse the judgment of the circuit court.

## Facts

This case involves an armed robbery that occurred at a store in Baltimore City on October 4, 1997. During the investigation of the crime, the police recovered two discharged shotgun shells from the scene, and eight days later in a search incident to the arrest of appellee, they recovered one live 16 gauge shotgun shell from appellee's person. The two shells recovered from the scene were later destroyed by the police department, pursuant to a disposal order, because the officer who signed the order did not realize the evidence pertained to a pending case. At the hearing on appellee's motion to dismiss, the State proffered that the shells recovered from the

scene were 16 gauge shells, while appellee asserted that, according to one police analysis, the shells were 12 gauge. The State also proffered that, if the live 16 gauge shell recovered from the appellee had been chambered in a shotgun, it might be possible to determine whether the live shell was chambered in the same gun that fired the two shells recovered at the scene.[1]

We reproduce herein the "facts" as contained in appellant's brief and adopted by appellee.

**October 4, 1997:** Kwang and Oksoon Lee, owners of a store, are involved in a confrontation with a man whom Oksoon Lee later identifies as Ruben. Money is taken and shots are fired. Two shotgun shells are recovered at the scene.

**October 11–12, 1997:** Oksoon Lee videotapes Ruben while he, a frequent customer, is in her store, and she selects Ruben's picture from a photographic array.

**October 12, 1997:** Ruben is arrested and a shotgun shell is recovered from his person.

**February 23, 1998:** Ruben is arraigned and counsel enters her appearance.

**March 12, 1998:** Ruben asserts his right to a speedy trial.

**April 30, 1998:** Ruben is scheduled to be tried on this date, but trial is postponed by the administrative judge until July 16, 1998, because of defense counsel's maternity leave and the prosecutor's need to retain an interpreter.

**Late June of 1998:** Defense counsel, who at this time is Gregory Martin, asks for additional discovery, i.e., the videotape of Ruben taken on October 11; the shotgun shells recovered at the scene of the crime on October 4; the crime lab report; and the shotgun shell recovered from Ruben when he was arrested on October 12.

---

1. Apparently, no test was performed to determine whether the live shell was chambered in a shotgun.

**July 10, 1998:** The prosecutor requests a postponement of the July 16 trial date, which is granted by the administrative judge, because the prosecutor has been selected by lottery to attend a mandatory work-related conference in South Carolina on July 13 through July 17. Trial is rescheduled for August 13, 1998.

**July 17, 1998:** Baltimore City Police Officer Sean Mayo signs a form authorizing the destruction of the shotgun shells that were recovered at the scene on October 4, 1998.

**July 27, 1998:** The two shotgun shells recovered at the scene are destroyed.

**August 13, 1998:** Defense counsel requests a one-week postponement to examine new evidence, and the administrative judge approves a postponement until August 20, 1998.

**August 20, 1998:** Trial does not occur on this date, seemingly as a consequence of several factors, i.e., Ruben was not brought to court and the judge assigned to preside at trial was unavailable.

**August 21, 1998:** The administrative judge postpones trial, due to unavailability of the assigned trial judge, until September 8, 1998. The case is assigned a specific trial date, rather than placed on the move list, because the prosecutor was scheduled to be on leave; the victims' daughter, who wanted to attend trial, was available on September 8; and, to avoid the expense of having to have an interpreter on call.

**September 8–10, 1998:** [The trial judge] entertains motions to suppress and motions to dismiss.

**September 9, 1998:** [The trial judge] declines to dismiss the charges based on Ruben's claim that Maryland Rule 4–271 had been violated.

**September 10, 1998:** [The trial judge] dismisses the charges against Ruben. . . .

(Transcript references omitted).

The circuit court conducted a speedy trial analysis under the Sixth Amendment to the United States Constitution[2] and

---

**2.** The Sixth Amendment provides in part:

concluded that, but for the destruction of the evidence, defendant's constitutional right to a speedy trial would not have been violated. The circuit court concluded that the right had been violated, however, because of the prejudice to the defense stemming from the fact that the defense could not have an expert examine the shells found at the scene. The circuit court reasoned as follows:

> There are four factors to be weighed, one, the length of the delay, two, the reason for the delay, three, the defendant's assertion of the right and, four, the prejudice to the defendant from the delay. These four factors are not necessarily exclusive. Brady versus State, 291 Maryland 261, 264 to 65 [434 A.2d 574] (1981).
>
> In this particular case it is factor four that sort of outweighs all the other factors. The length of the delay is of constitutional dimension. It is a hundred—and it is 330 days from the 10–12–97 arrest to the 9–8–[98] trial date. The assertion of the right is partial. Obviously the defendant asserted the right on a number of occasions, on 7–16–98 and on 8–20–98. He didn't assert it on 4–30–98 when the prior Defense attorney, Charlene Dukes was on maternity leave and the case was pending until July the 16[th] and he didn't assert it when he requested a seven day postponement on August the 13[th], but because the critical time period is July 17[th] it is the assertion on July 16[th] that ties into the critical factor. The reasons for the delay are garden variety and wouldn't have resulted in a dismissal had the evidence not been destroyed. The first 89 days from the arrest to the docketing of the case on the Circuit Court are neutral because they're administrative. It takes 89 days basically to process the paperwork. The 45 days from the filing of the charging document until the appearance of

---

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.. . .
U.S. Const. amend. VI. In *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), the Supreme Court held that the Sixth Amendment right to a speedy trial is applicable to the states through the Fourteenth Amendment.

Ms. Dukes at the first arraignment is neutral. The 66 days from the arraignment to the trial date is neutral and as a matter of fact it is hard to get trial dates 66 days after the arraignment, but the defendant came at a time of relatively low volume and got one. So, so far the first three periods, 89 plus 45 plus 66 is neutral. It is normal for the administration of justice. The next 77 days are attributable to the Defense. It wasn't the State's Attorney that was on maternity leave. It was Ms. Dukes and the Defendant asked for the postponement and had nothing else happened that probably would have defeated a speedy trial claim. Then on July 16 th the State asked for a postponement because the Assistant State's Attorney is away at a trial conference and it is a delay of 28 days which is attributable to the State. Then when the trial date is August the 13 th the Defense finds out about a shotgun and it has got an expert emerging that wants to analyze shells. It asks for a postponement in order to have the expert analyze the shells. That's a seven day delay attributable to Defense. Then on August 20 th Judge Strausberg because he's going to Australia can't hear the case. There is no other court. Mr. Coleman prefers not to go on the move list, wants a date set and we get a September 8 trial date, so those 18 days are attributable to the State. In that last period of 28 and 18 which as I say just that standing alone should not have resulted in a speedy trial violation. The reason for the delay is only attributable to the State for a grand total of 46 days. The Defense has asked for 77. All the rest of the time is administrative. There would not have been a dismissal of the charging document but the prejudice factor reigns supreme here because on July 17 th the officer in the case signs paperwork that destroys the shells and the Defense centers around being able to prove that a shell not identical to the shells, the shots that were fired was taken from him and if he can't physically have the shell to show the jury and to have his expert make some tests of it to find any flaw in the argument that it was the same kind of shell then he's being denied the right to confront his accusers and the

State by asking for the July 16th postponement and then destroying the evidence has put into motion some very rare and unique facts that caused in this particular case the prejudice to the Defendant which is so great that the indictment must be dismissed. If the State hadn't asked for the postponement the shells would be available for the Defense expert on July 16th and the analysis could have taken place and then any errors in signing the paperwork could have occurred and the evidence could have been destroyed and the dimension wouldn't have been so ominous once it had been seen by the Defense expert. It still might have been prejudicial. The jury couldn't see it, but at least the Defense have a counter view that they could describe to the jury of the expert having seen the shells, or if the officer hadn't been so sloppy in signing this paperwork and destroying the shells and denying the Defendant an opportunity to have the jury see the shells which is critical to his defense because the link not only is the identification but also it is corroborated by the fact that he has the same kind of shells on him when arrested is gone when the evidence is gone.

## Standard of Review

 In reviewing the judgment on a motion to dismiss for violation of a criminal defendant's constitutional right to a speedy trial, we accept the circuit court's findings of fact unless clearly erroneous. *Borgen v. State*, 58 Md.App. 61, 75, 472 A.2d 114 (1984). We then make our own independent constitutional appraisal. *State v. Bailey*, 319 Md. 392, 409, 415, 572 A.2d 544 (1990).

## Discussion

Appellant argues in essence that the circuit court erred in dismissing the case because the prejudice to the appellee caused by the negligent destruction of the shells was minimal, and when any such prejudice is weighed with the other factors relevant to the constitutional speedy trial analysis under *Bark-*

*er v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the result does not warrant dismissal.

Appellee argues that there was a delay of constitutional dimension in bringing him to trial, and that his case was prejudiced as a result of that delay and as a result of the loss of evidence occasioned by the delay. Appellee also raises the issue of the standard of review applicable to the circuit court's determination that the destruction of evidence was prejudicial to his case. Appellee contends that the circuit court made appropriate findings of fact, including the fact that there was prejudice to the appellee. Consequently, appellee characterizes the present dispute over whether his case was prejudiced as a factual dispute that this Court should reverse only if clearly erroneous. In the alternative, appellee urges us to review the circuit court's decision with respect to prejudice (1) under an abuse of discretion standard, since the decision resembles the evidentiary balancing test of probative value and potential prejudicial effect that is entrusted to a trial court's discretion or (2) if the court's prejudice determination is subject to plenary review, the court gave the prejudice factor appropriate weight, and its determination still should be affirmed.

As the circuit court noted, the question whether a criminal defendant's Sixth Amendment right to a speedy trial has been violated is analyzed in light of four factors that were identified by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In that case, the petitioner, Barker, was convicted of murder after his trial was continued 16 times. *See Barker,* 407 U.S. at 516–18, 92 S.Ct. 2182. In reviewing the denial of Barker's speedy trial motion, the Supreme Court noted that it is "impossible to determine with precision" when the constitutional speedy trial right has been denied. *Id.* at 521, 92 S.Ct. 2182. The Court then rejected rigid measures for defining the scope of the right, and instead set forth "some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." *Id.* at 530, 92 S.Ct. 2182. The Court

identified as helpful: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Id.* The Court stated that the length of delay is "to some extent a triggering mechanism," and that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* With respect to the ultimate constitutional analysis, the Court stated:

We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Id.* at 533, 92 S.Ct. 2182 (footnote omitted). In following this mandate, the Maryland Court of Appeals has stated that appellate review of constitutional speedy trial determinations should "be practical, not illusionary, realistic, not theoretical, and tightly prescribed, not reaching beyond the peculiar facts of the particular case." *Bailey,* 319 Md. at 415, 572 A.2d 544.

In this case, the delay of nearly 11 months from arrest to trial was of constitutional dimension, albeit barely so. *See Jones v. State,* 241 Md. 599, 608–12, 217 A.2d 367 (1966) (defendant in an armed robbery case denied speedy trial under the circumstances after a delay of approximately 9 ½ months), *overruled on other grounds by Stewart v. State,* 282 Md. 557, 386 A.2d 1206 (1978). *Cf. Flores v. State,* 120 Md.App. 171, 194, 706 A.2d 628 (1998) (delay of six months and 21 days is not of constitutional dimension); *Tapscott v. State,* 106 Md.App. 109, 125, 664 A.2d 42 (1995) (delay of slightly more than seven months is not of constitutional dimension), *aff'd,* 343 Md. 650, 684 A.2d 439 (1996); *Icgoren v. State,* 103 Md.App. 407, 423, 653 A.2d 972 (1995) (delay of eleven months

and 13 days is "barely" of constitutional dimension); *Carter v. State,* 77 Md.App. 462, 466, 550 A.2d 972 (1988) (delay of seven months and 25 days is of constitutional dimension in uncomplicated case involving credit card misuse); *Howard v. State,* 66 Md.App. 273, 291, 503 A.2d 739 (1986) (delay of eight months and 26 days is of constitutional dimension). We therefore analyze the delay in bringing appellee to trial and its consequences under the *Barker* factors.

### A. Length of Delay

Appellee alleges two distinct sources of prejudice in this case: the prejudice arising from the destruction of the shells, and the "presumed prejudice" arising from the total amount of time between arrest and trial. The length and nature of the delay that produced these two forms of prejudice are distinct. Although we must look at the total length and nature of the delay in assessing the presumed cumulative effect of that delay on the appellee, in assessing the prejudicial effect of the loss of evidence in this case, we shall focus exclusively on the period of delay that preceded the destruction of the shells.

While the total delay in this case was a few days shy of 11 months, the delay preceding the destruction of the shells was nine months and 15 days. As the above citations suggest, before the other circumstances of the case are weighed, a delay of nearly 11 months is cause for concern under the Sixth Amendment, while a delay of approximately 9 ½ months is relatively less egregious and its analysis necessarily more dependent on attendant circumstances.

### B. Reason for the Delay

We see no reason to modify the circuit court's conclusion that the State was responsible for 46 days of the delay, without regard to administrative time, and that the defense was responsible for a 77 day delay beginning April 30, 1998.[3]

---

3. The court also concluded that the defense had requested a postponement for one week from August 13, 1998 to August 20, 1998 in order to

Although the request for the continuance on April 30, 1998 was mutual—the defense attorney requested maternity leave and the State requested time to obtain a Korean interpreter for trial—it is significant that this first opportunity for a trial, approximately 6 ½ months after appellee was arrested, was continued at the request of appellee rather than over his objection. Appellee's desire for a speedy trial was not apparent at this point. When viewed from the perspective of the total delay before trial, this 77–day postponement far exceeds the 46 days in total postponements directly attributable to the State.

Viewed in relation to the period of delay that preceded the destruction of the shells found at the scene of the crime, however, the 77–day postponement is even more significant. Prior to the destruction of the shells, the defense had requested the 77–day continuance of April 30, 1998, but the State had requested a continuance of the subsequent July 16, 1998 trial date that amounted to 28 days—only 11 days of which preceded the destruction of the shells on July 27, 1998. Prior to the destruction of the shells, then, the State enjoyed 11 days of delay that were opposed by the appellee, while the defense enjoyed 77 days of delay.

In light of the 77 days of delay attributable to the defense, the total delay prior to the destruction of the shells is not of constitutional moment. Additionally, the length of this continuance far exceeds the subsequent delays attributable to the State. Consequently, we conclude that the reasons for the delay in this case narrowly favor appellant.

## C. Assertion of the Right to a Speedy Trial

Appellee first asserted his right to a speedy trial on March 12, 1998, exactly five months after his arrest. Appellee argues that, thereafter, he objected to the prosecutor's request for a postponement on July 10, 1998, that he requested a postpone-

---

examine new evidence. We shall not count this period of time against appellee in our analysis.

ment to review new evidence on August 13, 1998 but did not waive his statutory right to a speedy trial, and that he did not waive his statutory right to a speedy trial when the case again was delayed on August 21, 1998.

In addition to the frequency of the assertions, the nature of a defendant's assertions of his constitutional right to a speedy trial is relevant to the analysis. With respect to *how* a defendant asserts his right, the Supreme Court stated that courts could "weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection." *Barker,* 407 U.S. at 529, 92 S.Ct. 2182. Thus, the way a defendant asserts his right to a speedy trial is properly viewed as an indicator of the seriousness of the constitutional violation: "The more serious the deprivation, the more likely a defendant is to complain." *Id.* at 531, 92 S.Ct. 2182.

In the present case, the initial demand for a speedy trial was made in writing in an omnibus pretrial motion, and that right simply was not waived thereafter. Although such actions qualified as formal assertions of the constitutional right to a speedy trial, they were not calculated to forcefully bring the harsh consequences of the deprivation of a constitutional right to the attention of the circuit court. *Cf. Jones,* 241 Md. at 601–07, 217 A.2d 367 (defense attorney wrote letters to the prosecutor and trial court complaining of the delay in bringing the defendant to trial, repeatedly objected to the delay in court, and moved several times for dismissal on speedy trial grounds). We therefore conclude that appellee's efforts to assert his right to a speedy trial are neutral in this analysis, and do not strongly support or refute his argument that he was deprived of the right.

### D. *Prejudice to the Defendant*

We shall initially address appellee's arguments regarding the standard of review applicable to the circuit court's conclusion that appellee's case suffered prejudice. It is clear that the extent to which appellee's case was prejudiced is the

fourth and final factor for consideration in this appeal under the *Barker* analysis. That determination is therefore subject to independent appraisal by this Court. We will defer, however, to the circuit court's factual conclusion that the negligence of a Baltimore City police officer caused the destruction of the shells.

In *Barker*, the Supreme Court identified three interests that criminal defendants have in a speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. 2182. Of these interests, the Court stated

> the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.

*Id.*

Appellee alleges that his case was prejudiced by the total delay between his arrest and trial, by the impairment of his ability to assist in the preparation of his own defense during incarceration,[4] and by the destruction of evidence. Appellee asserts that the destruction of the shells recovered from the scene is prejudicial because it hampers his ability (1) to counter the State's evidence that he had on his person a shotgun shell of the same gauge as the shells found at the scene, and (2) to introduce evidence that he used a different type or brand of shell or that the live shell found on his person, if chambered, had been chambered in a shotgun other than the gun used at the scene.

We fail to see the clear exculpatory import of the shells recovered at the scene of the crime. The gauge of those shells

---

4. Appellee seems to assert this impairment not as the oppressive pretrial incarceration that *Barker* identified as a separate interest of an accused, but as a further burden on his ability to mount a defense.

is in dispute, and it is at least possible, consistent with police reports in the record, that the shells found at the scene were 16 gauge shells—the same gauge as the shell found on appellee's person. The maximum potential exculpatory value of the shells, had they been preserved, would have been to prove that (1) they were 12 gauge shells, and different from the shotgun shell found on his person when arrested, and (2) that the shell on his person had not been chambered in the shotgun used at the scene. Any such exculpatory value would be slight in relation to the eyewitness identification of appellee at the scene. Even if the State could produce evidence that the shells recovered at the crime scene matched the type of shell recovered from appellee, such evidence would be of slight probative value in putting the appellee at the scene and linking appellee to the shotgun used in committing the crimes. Evidence that the shell found on appellee's person had been chambered in the same shotgun as used at the scene would be more probative, but such evidence does not exist.

■ The *Barker* Court indicated that prejudice to the defense is clear when a defense witness dies "during a delay." In the case at bar, however, it is uncertain whether the lost shells would have been "witnesses" for the defense or "witnesses" for the prosecution. To the extent that the shells would have been useful in rebutting the State's physical evidence at trial, the effect of their loss can be ameliorated by an appropriate evidentiary ruling, or by a jury instruction on spoliation. In short, appellee can not establish particularized prejudice to his case as a result of the destroyed evidence. We shall therefore consider the potential for prejudice that arises from the lost shells indeterminate, as is the potential for prejudice that arises from the total period of delay before trial.

■ Such unspecified or "presumptive prejudice" may be sufficient in an appropriate case. *See Doggett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). But the weight of unspecified prejudice in the form of pretrial delay "increases with the length of delay," and must

be considered in light of the reasons for the delay. *See Doggett*, 505 U.S. at 656–57, 112 S.Ct. 2686. The destruction of the shells in this case must be analyzed in the same way, since, as counsel for appellee conceded before the circuit court, prejudice arising from the destruction of evidence five days after a crime is committed would have nothing to do with a defendant's speedy trial right. The unspecified prejudice in this case is therefore to a large extent dependent on the other factors, especially the length of the delay.

The circuit court decided that the prejudice arising from the destruction of the shells compelled dismissal. The circuit court also decided that dismissal would not have been warranted if the shells had not been destroyed. We note that appellee did not, and perhaps could not have, demonstrated with particularity how his case was prejudiced by the delay. We also note that the prejudice to appellee's case, if any, resulted in part from the negligent handling of evidence by the State, in part from administrative problems, and in part from both parties' permissive approach to trial delays. The delay in this case is barely of constitutional dimension and would be constitutionally insignificant without the continuance requested in part by appellee.

We conclude that unspecified prejudice such as exists in this case requires either a more protracted delay or a more egregious affront to a defendant's speedy trial rights to merit dismissal. Appellee's right to a speedy trial under the Sixth Amendment was not denied in this case, and consequently, we reverse the judgment of the circuit court and remand for further proceedings. Prejudice to appellee, if any, can be dealt with by excluding the State's evidence relating to the shells found at the scene and on appellee's person, as appropriate, or by instructions to the jury, if appropriate, with respect to the destruction of evidence.

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.**