752 A.2d 699

**In re THOMAS J.**

**No. 1032, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

June 2, 2000.

**400**

Geraldine K. Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before SONNER, ADKINS, and JAMES S. GETTY (retired, specially assigned) JJ.

SONNER, Judge.

The Circuit Court for Prince George's County, sitting as a juvenile court, found appellant, Thomas J., a juvenile, to be involved in the delinquent acts of attempted robbery with a deadly weapon, assault with intent to rob, assault, battery, and carrying a dangerous weapon openly with intent to injure. The court placed Thomas on unsupervised probation. On appeal, Thomas raises a single issue: Did the juvenile court err in denying appellant's motion to dismiss for violating appellant's right to a speedy trial? We find that it did and reverse the juvenile court's Disposition Order.

On January 18, 1996, the victim, a thirteen-year-old male, was at home alone and answered a knock at the door. A person wearing a gray mask "pushed his way through the

door with a knife," forced the victim to the victim's bedroom, made the victim lie down, and asked for his clothes. The perpetrator sat on the victim's chest and attempted to tie his hands with a telephone cord. The victim struggled with the perpetrator and "yanked the mask off his head," at which point the victim recognized Thomas, his next door neighbor, who was fourteen years old. Thomas fled from the victim's apartment. The victim reported the incident to his aunt, who called the police. Thomas was arrested the same day, taken to the police station, questioned, and released that night to his mother, Mrs. J., who signed a form upon Thomas's release into her custody. Paragraph 2 of the form stated "that the child was released into my custody at 9:00 p.m. on 1–18–96 pending possible proceedings," and paragraph 6 of the form required Mrs. J. to "immediately notify the Clerk of the Juvenile Court at the Court House, Upper Marlboro, Maryland, of any new address for [her] or the child." [1]

On May 2, 1996, a delinquency petition was filed and, on May 8, 1996, summonses were issued for Thomas and his mother to attend an arraignment hearing on May 24, 1996. However, the J. family had moved to another home in Prince George's County three weeks after the incident. When Thomas and Mrs. J. did not appear at the hearing, the Master rescheduled it for June 21, 1996, and requested "Service on child and parent to be by Sheriff's Service." Summonses were issued on May 28, 1996, as well as on May 30, 1996. A handwritten note on the bottom of the May 30, 1996 summonses stated "Sheriff Service." On June 5, 1996, the Deputy Sheriff returned the May 30, 1996 summonses "unable to contact." The summonses issued on May 28, 1996, were returned by the Post Office stating, "moved left no address; unable to forward." It is unclear from the record whether the original summonses issued on May 8, 1996, were returned to the court.

---

1. We note that the form is not in the record. Thomas does not dispute that Mrs. J. signed a form that required her to notify the Clerk's Office of any change of address.

Thomas failed to appear at the June 21, 1996 hearing. The court ordered that a "writ of [body] attachment will issue . . . , no bond set" and that Thomas was "[t]o be temporarily detained at appropriate Juvenile Justice facility/appropriate detention facility pending hearing on the next regular Court date." A writ review hearing was held on September 13, 1996. Again, Thomas failed to appear. The writ of body attachment was left outstanding and a new writ review hearing was scheduled for one year later.

A year later, the process repeated. A writ review hearing was held on September 9, 1997, at which Thomas failed to appear, and the writ of body attachment was left outstanding. The next writ review hearing was scheduled for one year later, when the process repeated again.[2]

On April 2, 1999, over three years and two months 'after his arrest, Thomas was served with the writ of body attachment. At the beginning of the adjudicatory hearing on May 20, 1999, Thomas's counsel made a motion to dismiss based on the denial of a speedy trial. Relying on *State v. Lawless*, 13 Md.App. 220, 283 A.2d 160 (1971), *cert. denied*, 264 Md. 749 (1972), *cert. denied*, 409 U.S. 855, 93 S.Ct. 192, 34 L.Ed.2d 99 (1972), the juvenile court denied the motion.[3]

■ Although the United States Supreme Court has not yet addressed whether a juvenile is entitled to a speedy trial

---

**2.** There appears to be a discrepancy as to what occurred in 1998. The docket entries show no activity in the case in 1998; however, the transcript reflects that the judge, who was apparently reading from the record, said that a writ review hearing was held on August 5, 1998, and that the writ of body attachment was left outstanding.

**3.** The juvenile court stated that in *Lawless*, even though the defendant was held in prison for four years before the State filed charges against him, the Court of Appeals held that his right to a speedy trial had not been violated. Appellant's brief argues that the court's recollection of the facts in *Lawless* was incorrect and lists three reasons why the court's reliance on *Lawless* was inappropriate. The State "agrees with Thomas J. that the juvenile court's reliance [on *Lawless* ] was 'inappropriate,' albeit for [different] reasons. . . ." Because we make our own constitutional appraisal, we decline to comment on the juvenile court's interpretation of or reliance on *State v. Lawless*.

under the Sixth Amendment, Maryland, as well as other jurisdictions, have held that the Sixth Amendment right to a speedy trial is applicable to juvenile proceedings. *Berryman v. State*, 94 Md.App. 414, 420, 617 A.2d 1120 (1993)(citing cases from Alaska, New York, and Iowa), *cert. denied*, 331 Md. 86, 626 A.2d 370 (1993). When assessing whether an appellant's right to a speedy trial has been violated, we must make an independent constitutional appraisal and balance the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):(1) length of the delay; (2) reasons for the delay; (3) appellant's assertions of his right to a speedy trial; and (4) prejudice to the appellant. *Berryman*, 94 Md.App. at 418, 420, 617 A.2d 1120. The Supreme Court described the first factor, length of the delay, as a "triggering mechanism" because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S.Ct. 2182.

 In applying the four-pronged *Barker* test, we bear in mind that "[t]he considerations in the juvenile context are vastly different from those in the criminal context. . . . [T]he overriding goal of Maryland's juvenile statutory scheme is to rehabilitate and treat delinquent juveniles so that they become useful and productive members of society." *In re Keith W.*, 310 Md. 99, 105–06, 527 A.2d 35 (1987). Courts in other jurisdictions that have addressed whether a juvenile's Sixth Amendment right to a speedy trial was violated have also evaluated the *Barker* factors in relation to the purposes of juvenile proceedings. *See In re D.H.*, 666 A.2d 462, 473 (D.C.1995) ("Although the factors used in evaluating speedy trial claims for criminal defendants are instructive, for purposes of consideration of a claim of a juvenile in a delinquency proceeding, they must be considered and applied in a manner which is consistent with the goals and purposes of our juvenile system."); *In the Interest of C.T.F.*, 316 N.W.2d 865 (Iowa 1982) (application of the *Barker* test for determining whether a juvenile has been denied the right to a speedy trial is appropriate, but should take into consideration the differences

between adult criminal prosecutions and juvenile delinquency proceedings).

With these considerations in mind, we turn to the *Barker* factors.

### Length of Delay

The length of delay is measured from the date of arrest or the institution of formal charges, whichever occurs first, to the date of trial. *Divver v. State*, 356 Md. 379, 388, 739 A.2d 71 (1999); *Berryman*, 94 Md.App. at 420–21, 617 A.2d 1120. Here, Thomas's right to a speedy trial was triggered on January 18, 1996, the day of his arrest. The adjudicatory hearing was held on May 20, 1999, more than three years and four months after his arrest. We find that such delay is clearly sufficient to trigger analysis of the other factors that go into the balance. This length of delay is especially egregious considering that the opportunity to rehabilitate and treat, the purpose of our juvenile justice system, was lost during some of the most formative years of Thomas's life. We will weigh this factor heavily in Thomas's favor.

### Reasons for Delay

The government's reason for a delay is weighed along a continuum with different weights assigned to different reasons. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. For instance, deliberate attempts by the State to delay trial weigh heavily against the State. *Id.; see also Divver v. State*, 356 Md. at 391, 739 A.2d 71 (1999); *Berryman*, 94 Md.App. at 421, 617 A.2d 1120. A more neutral reason for delay, such as negligence or overcrowded courts, weighs less heavily against the State but is nevertheless considered against the State because the ultimate responsibility for such circumstances rests with the government rather than with the defendant. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182; *Divver*, 356 Md. at 391, 739 A.2d 71. Finally, a valid reason for delay attributable to neither party, such as a missing witness, serves to justify the appropriate delay. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182; *Divver*, 356 Md. at 391, 739 A.2d 71.

The State contends that "the reason for the delay was solely attributable to Thomas J. and his mother, who moved shortly after Thomas J.'s delinquent acts without providing notice of their new address." The State points to the form Mrs. J. signed on January 18, 1996, when Thomas was released into her custody, requiring immediate notification of any new address. Therefore, the State argues that this factor should weigh in its favor.

On the other hand, Thomas argues that the State was negligent in attempting to contact him because the State made only one effort to contact him at "an address that agents of the State had actual knowledge was no longer the address." He contends that his mother provided a change of address to the Post Office and the police, and gave the detective in the case information about where she worked, which remained unchanged after the move. With only minimal effort, Thomas argues, the State could have located him either by: (1) contacting his mother at work, or (2) searching the database of pupils within the Prince George's County school system in which Thomas remained after the move.[4]

In *State v. Lawless*, 13 Md.App. at 239, 283 A.2d 160, this Court discussed "gradations" of the State's "inaction" when evaluating the reasons for delay. We compared situations in which "there is deliberate and knowing inaction in the face of clear and repeated demands [for a speedy trial]" with "what might be characterized as inadvertent inaction, or perhaps, as halting and less-than-diligent action." *Id.* at 239–40, 283 A.2d 160. Because the State made three bona fide attempts to summons Lawless, who had been transferred within the Maryland correctional system three times during all relevant times, we concluded that any delay was "accidental" and any fault of the State was minimal. *Id.* at 140–41, 283 A.2d 160.

Similarly, in this case, the record shows that the State made three attempts to summons Thomas and his mother, contrary

---

**4.** Thomas transferred from Benjamin Stoddert School to Andrew Jackson School because of the move. Both schools are in Prince George's County.

to Thomas's contention that the State made only one attempt. Although we recognize that the State probably could have located Thomas and could have issued the writ of body attachment earlier, rather than allow it to remain outstanding for years, we do not find this case to be deliberate and knowing inaction, but rather, "less-than-diligent action." As we recognized in *State v. Jones,* 18 Md.App. 11, 25–26, 305 A.2d 177 (1973):

> It is ... true, regrettably but realistically, that ... the service of process in urban centers today consists of little more than a one-shot trip to the single address appearing on the face of the paper to be served. For understaffed and overtaxed sheriff's offices and police departments, the handling of thousands of routine requests on an assembly line basis has become, lamentably, the standard, even if not the ideal, of urban court administration. When suspects drop, even unwittingly, from sight, law enforcement is frequently reduced to waiting for them to show up, sometime, somewhere.... Fault, if any, on the part of Prince George's County was minimal.

We similarly find that the fault of the State, if any, was minimal. Furthermore, "[a]lthough the State was not diligent ..., there is not the slightest implication that it failed to act in good faith." *Erbe v. State,* 276 Md. 541, 550, 350 A.2d 640 (1976).

As for Mrs. J.'s failure to notify the court of their change of address, we do not weigh this factor against Thomas. The State did not challenge Mrs. J.'s contention that she told the detective in the case where she worked and that she provided a change of address to the Post Office, as well as to the police. Had the State attempted to find Thomas, it probably could have found him within minutes. In addition, the form Mrs. J. signed indicated only the *possibility* that a proceeding would occur. We find this case similar to *State v. Hunnel,* 52 Wash.App. 380, 384–85, 760 P.2d 947 (1988), in which the defendant openly resided in the state of Washington, filed a change of address form at the post office, and gave the detective his employment information, and the addresses and

telephone numbers of his mother and sister. The Court of Appeals of Washington affirmed the lower court's dismissal of the case for failing to arrest the defendant within the prescribed time limits and stated, "When the State sits idly by and does nothing with the information available to it, it cannot claim that it made a good faith effort to locate the defendant." *Id.* at 386, 760 P.2d 947.

Here, Mrs. J. and Thomas were living openly in Prince George's County, the same county in which the incident occurred. There is no indication that they were deliberately attempting to delay the proceedings, or "absconding, escaping, or becoming ... fugitive[s] from justice." *Powell v. State,* 56 Md.App. 351, 363, 467 A.2d 1052 (1983) (citation omitted)(no speedy trial violation because most of the delay was attributable to appellant's own acts to delay trial). They did not jump bail and leave the State, nor did they conceal their true identities from law enforcement officials. *Id.* at 365, 467 A.2d 1052 (discussing *State v. Newman,* 117 R.I. 354, 367 A.2d 200 (1976) and *Cates v. United States,* 379 A.2d 968 (D.C.1977)). Because the State was less than diligent in finding Thomas, we will weigh the Reasons for Delay factor against the State, although not heavily.

### Assertion of the Right

It is undisputed that Thomas never asserted his right to a speedy trial, but, rather, made a motion to dismiss at the adjudicatory hearing on May 20, 1999. "[A] defendant's failure to demand a speedy trial during the period when he was unaware of the charge, cannot be weighed against him." *Brady v. State,* 288 Md. 61, 69, 415 A.2d 1126 (1980) (citing *Clark v. Oliver,* 346 F.Supp. 1345 (E.D.Va.1972), *rev'd on other grounds, Brady v. State,* 291 Md. 261, 434 A.2d 574 (1981)); *Lawless,* 13 Md.App. at 228–29, 283 A.2d 160 ("appellee had [never] been informed of the charges pending against him and was ... therefore, [not] in a position to make any demand or request for a prompt disposition...."). Although the State contends that Mrs. J. was given notice of **possible** pending proceedings when she signed the form, there is no evidence

that Thomas was aware that a delinquency petition had been filed. Therefore, we will not weigh this factor in either party's favor.

### Prejudice to the Appellant

Prejudice, the fourth factor, should be assessed in light of the interests that the speedy trial was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. 2182; *Brady*, 291 Md. at 267, 434 A.2d 574. Regarding the first interest, preventing oppressive pretrial incarceration, Thomas was served with the writ of body attachment on April 2, 1999, and detained until the arraignment on April 22, 1999, at which time he was remanded to the custody of the Sheriff, to be released to his mother subject to electronic monitoring. At the adjudicatory hearing on May 20, 1999, he was found to be "involved" in the delinquent acts. We do not find that Thomas was oppressively incarcerated pending the juvenile proceedings.

Regarding the second interest, minimizing the anxiety and concern of the accused, there is no evidence that Thomas knew of the delinquency petition until he was served with the writ and subsequently detained. However, in *Brady,* the Court of Appeals recognized that *not* knowing about criminal charges may actually generate *more* anxiety, and stated, "[t]his sudden awareness that he was not free, but still being held in jail for charges which had been dismissed the year before, must have generated a response more than mere anxiety. He had to be frustrated." *Brady,* 291 Md. at 268, 434 A.2d 574. Similarly, in this case, Thomas was suddenly detained for an incident that occurred more than three years before. We place particular emphasis on the fact that Thomas was fourteen years of age when the incident occurred and he was served with the writ at the age of seventeen. As we noted above, these three years are some of the most formative years in a person's life. For a teenager, three years and four months may seem a lifetime. It is reasonable to assume Thomas believed that no

charges would ever be filed and he would have been justified in so believing. As the Supreme Court stated in a footnote in *Application of Gault*, 387 U.S. 1, 21 n. 26, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), only about one out of nine youths will be referred to juvenile court in connection with a delinquent act before the age of 18, although self-report studies reveal that perhaps 90 percent of all young people have committed at least one act for which they could have been brought to juvenile court. We therefore find that Thomas suffered at least some prejudice beyond mere anxiety.

■ Regarding the third interest, limiting the possibility that the defense will be impaired, Thomas did not allege that the delay impaired his defense in any way. However, Maryland has long recognized that with a "substantial" delay arises a presumption of prejudice:

> Traditionally, three approaches have been used to arrive at a determination of prejudice. One approach is that it is incumbent upon the accused to make a showing of actual prejudice or at least a strong possibility of prejudice resulting to him or to his defense from the delay. Another approach is that prejudice will be conclusively presumed and necessarily follows from long delay. The middle position, and that used in this State, is that *a certain quantitative and qualitative degree of delay gives rise to a rebuttable presumption of prejudice and will shift the burden of going forward with the evidence from the accused to the State.* Before that critical point is reached, there rests upon the accused, as the moving party, the burden of persua[sion]. . . . *Once that critical point has been reached, however, the presumption of prejudice arises and the burden of going forward with the evidence shifts to the State.* That critical point on the delay scale where the presumption arises and where the burden shifts has been denominated the point of "substantial" delay. . . . [A] delay becomes "substantial" [depending on] the facts and circumstances of each particular case.

*Lawless,* 13 Md.App. at 232–35, 283 A.2d 160 (emphasis added); *see also State v. Ruben,* 127 Md.App. 430, 439–40, 732 A.2d 1004 (1999) ("the weight of unspecified prejudice in the form of pretrial delay 'increases with the length of delay,' and must be considered in light of the reasons for the delay"); *Wilson v. State,* 34 Md.App. 294, 299, 367 A.2d 970 (1976)("the delay of 13 months and three weeks . . . must be considered of sufficient length to invoke the presumption of prejudice and shift the burden to the State to produce evidence which will demonstrate that the appellants suffered no prejudice by reason of the delay").

The Supreme Court has also recognized that the importance of presumptive prejudice increases with the length of delay. *Doggett v. United States,* 505 U.S. 647, 655–56, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In *Doggett,* the defendant was indicted on federal drug charges, but left the country before being arrested. *Id.* at 648–49, 112 S.Ct. 2686. Over two and one-half years later, he returned to the United States and lived openly under his own name. *Id.* at 649, 112 S.Ct. 2686. Almost six years later, Doggett was arrested after a simple credit check on people subject to outstanding arrest warrants revealed where he lived and worked. *Id.* at 650, 112 S.Ct. 2686. The Supreme Court held that Doggett's speedy trial rights were violated and described the Government's negligence and resulting prejudice to Doggett as follows:

> For six years, the Government's investigators made no serious effort to test their progressively more questionable assumption that Doggett was living abroad, and, had they done so, they could have found him within minutes. . . . [T]he weight we assign to official negligence *compounds over time as the presumption of evidentiary prejudice grows. ,Thus, our toleration of such negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial.* . . . To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, the Government's egregious persistence in failing to

prosecute Doggett is clearly sufficient.... When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence [by pleading guilty], *nor persuasively rebutted,* the defendant is entitled to relief.

*Id.* at 652–53, 657–58, 112 S.Ct. 2686 (emphasis added).

The difficulties in establishing prejudice in criminal prosecutions are even more difficult in juvenile proceedings. As the Court of Appeals of New York stated:

In criminal cases, establishing actual prejudice may be a particularly difficult factor to prove in a speedy trial analysis due to the fact that time's erosion of exculpatory evidence and testimony 'can rarely be shown.' *Determining whether the juvenile's defense is impaired due to a delay may be even more arduous. Typically, a juvenile released by a court with no direction to reappear is unlikely to appreciate the importance of taking affirmative steps toward the ultimate resolution of the case, and is just as unlikely to possess the means and sophistication to do so....* In a criminal prosecution the sheer length of a delay is important because it is likely that 'all other factors being equal, the greater the delay the more probable it is that the accused will be harmed thereby.' *The effects of that kind of delay in the juvenile context may be even more profound. A juvenile, experiencing the vicissitudes of childhood and adolescence, is more likely to suffer from a lack of memory than an adult. A juvenile is less likely than an adult to preserve his or her memory concerning the incident in question, his or her whereabouts on relevant dates, the identity of potential witnesses, and various other crucial details. Thus, there is an even greater potential for impairment of a juvenile's defense.*

*In the Matter of Benjamin L.,* 92 N.Y.2d 660, 668–69, 685 N.Y.S.2d 400, 708 N.E.2d 156 (1999)(emphasis added) (citations omitted).

■ In this case, we find that the delay of over three years reached that critical point of being a "substantial" delay where a presumption of prejudice arose. Accordingly, the burden shifted to the State to rebut the presumption of prejudice. This the State has failed to do. We therefore weigh the Prejudice to the Appellant factor in Thomas's favor.

■ Balancing the four factors, we conclude that Thomas's right to a speedy trial was violated. It is most unfortunate that an opportunity to treat and rehabilitate Thomas was lost,[5] as was the victim's and the public's interest in justice. However, given the extraordinary delay caused by the State's lack of diligence, we must reverse the Juvenile Court's Disposition Order.

**DISPOSITION ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY SITTING AS A JUVENILE COURT REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE DELINQUENCY PETITION.**

**COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

---

5. The record before us does not indicate whether Thomas has been involved in any other delinquent acts.