ROBERT J. PILAND, APPELLANT, v. CLARK COUNTY JUVENILE COURT SERVICES, RESPONDENT.

No. 5842

July 30, 1969          457 P.2d 523

*James D. Santini,* Public Defender, and *Robert N. Peccole,* Assistant Public Defender, Clark County, for Appellant.

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, and *Leonard I. Gang,* Special Juvenile Deputy, Clark County, for Respondent.

**O P I N I O N**

By the Court, MOWBRAY, J.:

This is an appeal from a denial of a petition for a writ of habeas corpus, filed on the ground that the petitioner, a juvenile, had been denied his constitutional right to a speedy trial.

We reverse, and order that the writ issue and that the juvenile be released from custody.

The juvenile court system as we have come to know it in America began at the end of the last century. Special proceedings were inaugurated for those courts dealing with youthful offenders. The basic philosophy was not predicated upon the traditional adversary scheme of Anglo-American jurisprudence but upon the notion that the court should act as *parens patriae* when considering the juvenile offender.

All this has been changed by the landmark case of In re Gault, 387 U.S. 1, handed down by the High Court in 1967. In reviewing the history of the juvenile court system, the Supreme Court of the United States said in Gault, at 14:

"The history and theory underlying this development are well-known, but a recapitulation is necessary for purposes of this opinion. The Juvenile Court movement began in this country at the end of the last century. From the juvenile court statute adopted in Illinois in 1899, the system has spread to every State in the Union, the District of Columbia, and Puerto Rico. The constitutionality of Juvenile Court laws has been sustained in over 40 jurisdictions against a variety of attacks.

"The early reformers were appalled by adult procedures and penalties, and by the fact that children could be given long prison sentences and mixed in jails with hardened criminals. They were profoundly convinced that society's duty to the child could not be confined by the concept of justice alone. They believed that society's role was not to ascertain whether the child was 'guilty' or 'innocent,' but 'What is he, how has he become what he is, and what had best be done in his interest, and in the interest of the state to save him from a downward career.' The child—essentially good, as they saw it—was to be made 'to feel that he is the object of [the state's] care and solicitude,' not that he was under arrest or on trial. The rules of criminal procedure were therefore altogether inapplicable. The apparent rigidities, technicalities, and harshness which they observed in both substantive and procedural criminal law were therefore to be discarded. The idea of crime and punishment was to be abandoned. The child was to be 'treated' and 'rehabilitated' and the procedures, from apprehension through institutionalization, were to be 'clinical' rather than punitive.

"These results were to be achieved, without coming to conceptual and constitutional grief, by insisting that the proceedings were not adversary, but that the state was proceeding as *parens patriae*. . . .

. . . .

". . . In 1937, Dean Pound wrote: 'The powers of the Star Chamber were a trifle in comparison with those of our juvenile courts. . . .' The absence of substantive standards has not necessarily meant that children receive careful, compassionate, individualized treatment. The absence of procedural rules based upon constitutional principle has not always produced fair, efficient, and effective procedures. Departures from established principles of due process have frequently resulted not in enlightened procedure, but in arbitrariness. The Chairman of the Pennsylvania Council of Juvenile Court Judges has recently observed: 'Unfortunately, loose procedures, high-handed methods and crowded court calendars, either singly or in combination, all too often, have resulted in depriving some juveniles of fundamental rights that have resulted in a denial of due process.'

"Failure to observe the fundamental requirements of due process has resulted in instances, which might have been avoided, of unfairness to individuals and inadequate or inaccurate findings of fact and unfortunate prescriptions of remedy. Due process of law is the primary and indispensable foundation of individual freedom. It is the basic and essential term in the social compact which defines the rights of the individual and delimits the powers which the state may exercise. As Mr. Justice Frankfurter has said: 'The history of American freedom is, in no small measure, the history of procedure.' But in addition, the procedural rules which have been fashioned from the generality of due process are our best instruments for the distillation and evaluation of essential facts from the conflicting welter of data that life and our adversary methods present. It is these instruments of due process which enhance the possibility that truth will emerge from the confrontation of opposing versions and conflicting data. 'Procedure is to law what "scientific method" is to science.' " (Footnotes omitted.)

As a result, the High Court declared that due process dictates that certain minimum standards be followed in juvenile court proceedings; namely, (1) adequate notice of the nature of the proceedings to the parents and the offender, (2) right to counsel, (3) right to confrontation and cross-examination of witnesses, and (4) the privilege against self-incrimination.

We are not presented with a determination of whether such safeguards were afforded the offender in this case. Rather, we have the question of determining whether the basic right to a speedy trial has been denied the offender in this case and, if so, whether there has been a violation of the mandates announced in Gault. We rule that there has been a denial of the right to a

speedy trial and that the offender has been denied due process of law and must be released from custody.

The facts are these: On May 19, 1967, the appellant, Robert J. Piland, who was then 17 years old, was indicted on the charge of robbery. He was tried on June 19, 1967, found guilty, and sentenced to serve not less than 5 nor more than 6 years in the state penitentiary. He appealed from the judgment of conviction on the ground that he had never been certified to stand trial as an adult, as required by law. Kent v. United States, 383 U.S. 541 (1966). The District Attorney of Clark County filed an admission of error. The case was reversed and remanded for further proceedings. The order of remand was filed on May 13, 1968. On June 20, 1968, appellant's counsel sent a letter to Warden Carl Hocker of the Nevada State Prison requesting that appellant be returned to Clark County. Copies of the District Attorney's admission of error and this court's order of remand were included with the letter. The appellant was returned to the Clark County Jail on August 1, 1968, and there he remained. On October 13, 1968, his counsel filed in the district court a petition for a writ of habeas corpus seeking appellant's release. The district judge granted the petition, but without prejudice to the State to institute new proceedings if the State elected to do so. The State did so elect, but this time the State proceeded in the juvenile division of the district court, and appellant was treated as a juvenile offender. On December 27, 1968, his counsel filed another application for habeas, on the ground that appellant had been denied his right to a speedy trial, in derogation of his constitutional rights. The district judge denied the application; hence this appeal.

Certainly, under the factual position of this case, appellant has been denied due process, and the habeas writ should have issued. Admittedly, Gault does not expressly set forth, as one of the safeguards of due process mentioned in the opinion, the right to a speedy trial, and perhaps the air would have been cleared on this point had the Court expressly so held. But we believe the right is axiomatic, because of the mandates announced in Gault. To rule otherwise would emasculate the safeguards that were expressly enumerated: adequate notice of hearing, right to counsel, cross-examination of witnesses, and privilege against self-incrimination. If the youthful offender were not entitled to a speedy trial, he conceivably might never be provided a forum in which he could enjoy the basic rights of due process specifically given to him in Gault.

It is ordered that the petition for habeas be granted, that the writ issue, and that the appellant be discharged from custody.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.